1

2

3

4

5

6 **IN THE UNITED STATES DISTRICT COURT**

7 **FOR THE DISTRICT OF ARIZONA**

8

| | |
|---|---|
| 9 Angel Santa Maria Bonillas, | No. CV-13-02563-TUC-CKJ |
| 10 Petitioner, | **ORDER** |
| 11 v. | |
| 12 Charles L Ryan, et al., | |
| 13 Respondents. | |

14

15     Petitioner Angel Santa Maria Bonillas filed an *pro se* Amended Petition Under 28

16 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death

17 Penalty). (Doc. 25.)   Respondents filed an Answer, and Petitioner filed a Reply

18 (Traverse). (Docs. 26, 53.)  This matter was referred to Magistrate Judge Leslie Bowman

19 for a Report and Recommendation (R & R) pursuant to Rules 72.1 and 72.2 of the Local

20 Rules of Civil Procedure. (Doc. 10.)  Magistrate Judge Bowman issued an R & R on

21 March 23, 2016 recommending that this Court deny the Petition.  (Doc. 57.)   After

22 numerous extensions, Petitioner submitted his Objections to the R & R on July 5, 2016,

23 and Respondents filed a Response on August 29, 2016.  (Docs.  69, 71.)

24     The Court has reviewed the amended petition (Doc. 25 and exhibits),

25 Respondents' response (Doc. 26) and exhibits, Petitioner's traverse (Doc. 53), the R & R

26 (Doc. 57), Petitioner's objections to the R & R (Doc. 69), and Respondents' response to

27 the Objections (Doc. 71.)  After de novo review, the Court finds no error and will adopt

28 the R & R in its entirety.

I.     **Summary of the Case**

The R & R states the following summary of the case:

Bonillas was found guilty of second-degree murder after a jury trial. (Doc. 26-1, p. 2) He was convicted of killing his nephew, Adan, after they got into an argument at a birthday party for Bonillas's mother. (Doc. 26-1, pp. 3-4); (Doc. 26, pp. 3-4) The party was held at the home of Adan's brother, Adrian. *Id.* When the argument became heated, Adrian noticed Bonillas had a gun and a knife and became concerned. *Id.* He summoned the police and another brother, Abram, for help. *Id.* He then separated Adan and Bonillas by taking Adan outside and locking Bonillas in the house behind a metal security screen door. *Id.* Shortly after Abram arrived in his car, Bonillas shot twice through the metal security door fatally wounding Adan. *Id.* Adan's brothers drove him away from the house and called for an ambulance. *Id.* The brothers testified at trial that Adan was unarmed. (Doc. 26-9, pp. 15, 51); (Doc. 26-10, pp. 25, 43); (Doc. 26-13, p. 22) Forensic pathologist Cynthia Porterfield testified that Adan was killed by a bullet, which was deformed when it passed through a metal screen door. (Doc. 26-9, pp. 67-68) She opined that because the bullet's trajectory was affected by its collision with the metal screen door, it was not possible to determine the location of the gun in relation to the victim. (Doc. 26-9, p. 71); (Doc. 26-10, pp. 5-6)

When Deputy Loza arrived at the scene of the shooting, he found Bonillas in a nearby alley. (Doc. 26-11, p. 12) Deputy Loza asked, "What's going on?" *Id.*, p. 13 Bonillas told the deputy "he did it and he was turning himself in." *Id.* Loza put Bonillas in handcuffs and escorted him toward his patrol car. *Id.*, p. 14 Bonillas explained "someone was trying to punk him . . . so he had to do him." (Doc. 26-11, p. 14) He saw detectives in the alleyway and stated "there is a .45 in the alley." (Doc. 26-11, p. 16) He continued, "He's a pretty tough kid; I think he's going to make it; I was trying to wing him." *Id.*, p. 17 He explained, "I think he had a gun, I'm pretty sure." (Doc. 26-11, p. 17)

A neighbor testified that she heard a shot and saw two men in the carport. (Doc. 26-12, p. 39) One of the men was holding a gun. *Id.* The men got in a car and drove off. Officers later found two guns on the floor of Abram's car. Abram admitted one of the guns belonged to Adan, the victim. (Doc. 26-10, p. 41)

Bonillas's theory at trial was that he shot in self-defense because Adan had a gun, which ended up in Abram's car when the brothers drove Adan from the scene of the shooting. (Doc. 26-13, p. 30). Trial counsel argued Abram and Adrian testified falsely in order to have Bonillas wrongfully convicted. (Doc. 26-13, pp. 28-29)

- 2 -

The trial court sentenced Bonillas to a sixteen-year term of imprisonment. (Doc. 26-1, p. 3) On direct appeal, Bonillas argued (1) his statements to the police should have been suppressed as a violation of *Miranda* and (2) he should have been given a new trial because Deputy Loza's report was inadvertently sent to the jury for use in its deliberations. (Doc. 26-1, p. 3) The Arizona Court of Appeals affirmed his conviction and sentence on June 17, 2010. *Id.* Bonillas did not seek review from the Arizona Supreme Court. (Doc. 26, p. 4); (Doc. 26-1, p. 12)

On January 29, 2010, Bonillas filed notice of post-conviction relief. (Doc. 26-1, p. 16) In his petition, he argued (1) he found evidence that Deputy Loza testified inaccurately in another trial, (2) the state committed prosecutorial misconduct by failing to disclose that evidence, (3) trial counsel was ineffective for advising him not to testify at trial, (4) trial counsel was ineffective for failing to secure testimony from the jurors establishing that they relied on Loza's report during deliberations, and (5) appellate counsel was ineffective for failing to challenge the introduction of Loza's report to the jury. (Doc. 26-1, pp. 21-25) The trial court denied the petition on July 15, 2011. (Doc. 26-16, p. 10) The trial court denied Bonillas's motion for reconsideration on August 11, 2011. (Doc. 26-16, p. 14)

The Arizona Court of Appeals granted review but denied relief on January 27, 2012. (Doc. 26-1, p. 27)

The Arizona Supreme Court denied review on July 11, 2012. (Doc. 26-1, p. 35)

Bonillas filed a second notice of post-conviction relief on September 18, 2012. (Doc. 26-2, p. 2) The notice was dismissed on July 24, 2014 on the defendant's motion. (Doc. 26-16, p. 27)

(Doc. 57 at 1-3.)

Petitioner filed an amended petition for writ of habeas corpus on September 3, 2014, raising the following claims: (1) trial counsel was ineffective for failing to interview Francisco Santamaria who could have testified that Adan told Santamaria that he, Adan, was going to kill Bonillas because Bonillas had Adan's father sent to prison; (2) trial counsel was ineffective for failing to conduct DNA tests of the black gun later found in Abram's car and for failing to impeach witnesses; (3) trial counsel was ineffective for failing to hire a ballistics expert; (4) trial counsel was ineffective for failing to argue self-defense; (5) the state failed to disclose Loza's history of perjury; (6) trial counsel, appellate counsel, and PCR (post-conviction relief) counsel were

ineffective in their handling of his motion for a new trial, which was based on the fact that Loza's report was inadvertently given to the jury to use during deliberations; and (7) the prosecutor gave false testimony concerning how the bullet was broken by the metal screen. (Doc. 25.) In their answer, Respondents argue Petitioner's claims are procedurally defaulted or should be denied on the merits. (Doc. 26.)  Petitioner filed a Traverse on March 17, 2016. (Doc. 53.)

## II.   GOVERNING LEGAL STANDARDS

### A.   In General

The federal courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws of treaties of the United States*." 28 U.S.C. § 2254(a) (emphasis added).  Moreover, a petition for habeas corpus by a person in state custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, 563 U.S. 170 (2011).  Correcting errors of state law is not the province of federal habeas corpus relief.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, mandates the standards for federal habeas review.  *See* 28 U.S.C. § 2254.  The "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, — U.S. —, 134 S.Ct. 10, 16 (2013). Federal courts reviewing a petition for habeas corpus must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and

convincing evidence.'"  *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007) (citing 28 U.S.C. § 2254(e)(1)).   Moreover, on habeas review, the federal courts must consider whether the state court's determination was unreasonable, not merely incorrect.  *Landrigan*, 550 U.S. at 473; *Gulbrandson v. Ryan*, 738 F.3d 976, 987 (9th Cir. 2013).   A determination is unreasonable where a state court properly identifies the governing legal principles delineated by the Supreme Court, but when applying the principles to the facts before it, arrives at a different result.  *See Harrington v. Richter*, 562 U.S. 86 (2011); *Williams v. Taylor*, 529 U.S. 362 (2000); *see also Casey v. Moore*, 386 F.3d 896, 905 (9th Cir. 2004).  "AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt*, 134 S.Ct. at 10 (quoting *Harrington*, 562 U.S. at 103 (alterations in original).

### B.    Exhaustion of State Remedies

Prior to application for a writ of habeas corpus, a person in state custody must exhaust all of the remedies available in the State courts.  28 U.S.C. § 2254(b)(1)(A).  This "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court."  *Rose v. Lundy*, 455 U.S. 509, 520 (1982).

Section 2254(c) provides that claims "shall not be deemed . . . exhausted" so long as the applicant "has the right under the law of the State to raise, by any available procedure the question presented."  28 U.S.C. § 2254(c).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Fair presentation requires that a state prisoner must alert the state court "to the presence of a federal claim" in his petition; simply labeling a claim "federal" or expecting the state court to read beyond the four corners of the petition is insufficient.  *Baldwin v. Reese*, 541 U.S. 27, 33 (2004). The Petitioner must explicitly alert the state court that he is raising a federal constitutional claim. *Duncan v. Henry*, 513 U.S. 364, 366 (1995); *Casey v. Moore*, 386 F.3d 896, 910-11 (9th Cir. 2004).

Furthermore, in order to "fairly present" his claims, the prisoner must do so "in each appropriate state court." *Baldwin*, 541 U.S. at 29, 124 S.Ct. at 1349. "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state." *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (9th ed. 1998)). But for non-capital cases in Arizona, "review need not be sought before the Arizona Supreme Court in order to exhaust state remedies." *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *see also Crowell v. Knowles*, 483 F.Supp.2d 925 (D. Ariz. 2007); *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998).

In Arizona, there are two procedurally appropriate avenues for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner is precluded from relief on any claim that could have been raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.2(a)(3).

## C. Procedural Default

With limited exception, where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review. *Teague v. Lane*, 489 U.S. 288, 298 (1989). [1]

A procedural default may preclude a prisoner's habeas petition from federal review in two ways. First, the petitioner may be precluded where he presented his claims

---

[1] "A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 650 (1991).

to the state court, which denied relief based on independent and adequate state grounds. *Coleman*, 501 U.S. at 728.

Second, the petitioner may be precluded where he "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1 (citations omitted).

Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result of the violation. *Teague*, 489 U.S. at 298 (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice); *see also Smith v. Murray*, 477 U.S. 527, 534 (1986) (recognizing "that a federal habeas court must evaluate appellate defaults under the same standards that apply when a defendant fails to preserve a claim at trial."). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such] there is no basis on which to address the merits of his claims.").

In addition, a habeas petitioner must show actual prejudice, meaning that he "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (emphasis in original) (internal quotations omitted). Without a showing of both cause and prejudice, a habeas petitioner cannot overcome the procedural default and obtain review by the federal courts. *Id.*

The Supreme Court has recognized that "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a

fundamental miscarriage of justice.'"  *Coleman*, 501 U.S. 722, 748 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1982)).  "The fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'"  *Herrara v. Collins*, 506 U.S. 390, 404 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)).  Thus, "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Herrara*, 506 U.S. at 404.  Further, in order to demonstrate a fundamental miscarriage of justice, a habeas petitioner must "establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(B).

In addition, for certain claims, a limited avenue to excuse procedural default exists under *Martinez v. Ryan.* 132 S.Ct. 1309, 1315 (2012). Because "[t]here is no constitutional right to an attorney in state post-conviction proceedings . . . a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*, 501 U.S. at 752 (internal citations omitted). Consequently, any ineffectiveness of PCR counsel will ordinarily not establish cause to excuse a procedural default. The Supreme Court, however, has recognized a "narrow exception" to *Coleman*'s procedural default principle: "inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 132 S.Ct. at 1315. The Ninth Circuit has expanded *Martinez's* scope to include procedurally defaulted claims of ineffective appellate counsel. *Nguyen v. Curry*, 736 F.3d 1287, 1294–96 (9th Cir. 2013).

Under *Martinez* a petitioner may establish cause for the procedural default of an ineffective assistance claim "by demonstrating two things: (1) 'counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 . . . (1984),' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to

say that the prisoner must demonstrate that the claim has some merit.'" *Cook v. Ryan,* 688 F.3d 598, 607 (9th Cir. 2012) (quoting *Martinez,* 132 S.Ct. at 1318); *see Clabourne v. Ryan,* 745 F.3d 362, 377 (9th Cir. 2014); *Dickens v. Ryan,* 740 F.3d 1302, 1319–20 (9th Cir. 2014) (en banc); *Detrich v. Ryan,* 740 F.3d 1237 (9th Cir. 2013) (en banc); *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012).

The court examines whether an ineffective assistance of counsel claim is substantial under the standard stated in *Strickland.* 466 U.S. 668. Petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> In assessing prejudice under *Strickland,* the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently…. Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different." [466 U.S.] at 696. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.,* at 693, 697. The likelihood of a different result must be substantial, not just conceivable. *Id.,* at 693.

*Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal citations omitted).

A court need not address both components of the inquiry or follow any particular order in assessing deficiency and prejudice. *Strickland*, 466 U.S. at 697. If it is easier to dispose of a claim on just one of the components, a court may do so. *Id.* Additionally, not just any error or omission of counsel will be deemed "deficient performance" that will satisfy *Martinez;* if post-conviction counsel "in the initial-review collateral proceeding did not perform below constitutional standards," that attorney's performance does not constitute "cause." 132 S.Ct. at 1319. Most notably, counsel "is not necessarily ineffective for failing to raise even a *non-frivolous* claim," much less a frivolous claim. *Sexton*, 679 F.3d at 1157 (emphasis added).

**D.     Review of R & R**

The Court reviews de novo the objected-to portions of the R & R,  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), and  reviews for clear error the unobjected-to portions of the R & R.  *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *see also, Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998).

**III.   DISCUSSION**

Petitioner has filed an 80-page Objection to the R & R. (Doc. 69.) Petitioner's objections include disputes of almost every finding made by the Magistrate Judge, including the Magistrate Judge's characterizations of Petitioner's claims and her summaries of the evidence. Generally, the objections simply repeat Petitioner's arguments made in the amended petition and his traverse and provide no explanation of the precise dispute and why it is material to Petitioner's claim and no analysis to show how the Magistrate Judge's findings and conclusions are erroneous.  The objections also include 14 pages of objections to the R & R's summary of the case; the Court will turn first to these objections.  (Doc. 69 at 3-17; ref. Doc. 57 at 1-4.)

The Magistrate Judge's summary relied on the trial transcripts and the Arizona Court of Appeals' findings of fact, which are entitled to a presumption of correctness. (Doc. 57, at 1–2 (citing memorandum decision and transcripts)); 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct."); *see Sumner v. Mata*, 449 U.S. 539, 547 (1981) (presumption of correctness "requires deference by federal courts to factual determinations of all state courts"). Petitioner does not explain how the claimed discrepancies between the facts in the R & R and the state court memorandum decision or the record are material to his claims.  The objections are overruled.

For example, Petitioner claims that the Magistrate Judge erroneously stated that Petitioner was convicted of second-degree murder for "killing his nephew, Adan, after they got into an argument at a birthday party for [Petitioner's] mother." (Doc. 69 at 3.) The objection does not identify the specifically disputed fact or facts.  Petitioner cites

language in the Respondents' answer to his habeas petition and exhibits attached to his traverse. (Doc. 69 at 3–4; ref. Doc. 26 and Doc. 53.)  But these documents state that Petitioner was, in fact, convicted of second-degree murder.  Likewise, Petitioner claims error regarding the statement that "[t]he party was held at the home of Adan's brother Adrian"; Petitioner cites the affidavit of his mother, which he presented with his traverse, stating that she is the owner of the house and that Petitioner lived there. (Doc. 69 at 4–5; ref. Doc. 57 at 1–2.)  But Adrian testified that, at the relevant time, Adrian "was living at [his] grandma's house and it was just [him] and [his] aunt living there." (Doc. 26–8 at 26–27.) Adrian further testified that Petitioner lived in another state and was staying at the house while in town for his mother's birthday celebration. (*Id.* at 27–29.) Respondents asserts that Petitioner did not contest these facts at trial. Moreover, even if the mother's affidavit establishes a discrepancy in the identity of the owner and occupants of the house, it is immaterial to Petitioner's claims.  Petitioner certainly does not explain why the identity of the owner is relevant. These objections are frivolous and are overruled.

Petitioner disputes the Magistrate Judge's description of the events immediately before the shooting when Petitioner's argument with his nephew "became heated." (Doc. 69 at 5–6.) It is unclear what specific facts Petitioner objects to, but the facts stated in the R&R are consistent with the evidence presented at trial.  (Doc. 26–1, Ex. A; Doc. 26-8 at 38–44; Doc. 26-9 at 1–2; Doc. 26-10 at 23– 28.)

Petitioner also contends that the record does not support the Magistrate Judge's statement that he "shot twice through the metal security door fatally wounding" his nephew. (*Id.* at 6; Doc. 57, at 2.) It is unclear what part of this statement Petitioner finds objectionable.[2] The Court finds this statement is consistent with evidence presented at trial, including the medical examiner's testimony that, "I was told there was a . . . screen door that the bullet went through before it hit [Adan], which is what caused the bullet to

---

[2] If he is objecting to the language "shot twice," the Court notes that elsewhere Petitioner cites to his amended habeas petition and trial counsel's Motion to Suppress that asserted that Petitioner filed two warning shots.  (Doc. 69 at 44; ref. Doc. 25 at 8.)

become deformed." (Doc. 26-9 at 68.) It is also consistent with the police reports that Petitioner cites, as well as the declaration from his ballistics expert.[3] (Doc. 69 at 6–8; ref. Doc. 53, Exs. A, E, Q.) Petitioner's ballistics expert opines that "the bullet struck the steel structure" and "deflected toward the victim." (Doc. 53 at 7.)

Petitioner asserts that the Magistrate Judge's account of the testimony of the forensic pathologist, Dr. Cynthia Porterfield, is incorrect. (Doc. 69 at 8-9.)  He argues that Dr. Porterfield's testimony has "no credence or expert opinion value" because she testified that she was told there was a screen door that the bullet went through.  (*Id.*) He appears to be arguing that the deformity to the bullet was not just from hitting the screen door.  But it is unclear why this is significant.  Dr. Porterfield later testified that she could not determine the trajectory of the bullet.  (Doc. 57 at 10.)  But Petitioner does not dispute that Dr. Porterfield testified consistently with the Magistrate Judge's account of her testimony. (Doc. 69 at 8–12.) Thus, the Magistrate Judge's summary of Dr. Porterfield's testimony is supported by the record, and Petitioner has failed to demonstrate error.  (See Doc. 26-9 at 68.)

Petitioner also disputes the Magistrate Judge's account of his confession to Deputy Loza. (Doc. 69 at 13–15; Doc. 57 at 2.) The record, however, supports the Magistrate Judge's description of Loza's and Petitioner's statements. (Doc. 26-11 at 12–17.) Petitioner notes that Deputy Loza's testimony conflicts with the statements of other officers concerning the point at which Loza made contact with Petitioner; in doing so he also disputes the veracity of Loza's testimony concerning his statements. (Doc. 69 at 13–14.) He does not dispute, however, that the Magistrate Judge correctly summarized Loza's testimony. (*Id.*)

Petitioner objects to the Magistrate Judge's description of the testimony of a neighbor. (Doc. 69 at 15–17.) While Petitioner elaborates on the Magistrate Judge's summary by reciting testimony regarding the guns that were later found in the car in which Adan was transported, he does not explain how he believes the Magistrate Judge's

---

[3] Petitioner presented these to this Court for the first time with his Traverse.

summary is incorrect. The Court finds it is not incorrect; as the R&R accurately summarizes the neighbor's testimony. (Doc. 26-12 at 38–41.) Further, the Magistrate Judge's statement that two guns were found on the floor of the car and that one of the guns belonged to the victim, is consistent with the testimony of Abram, another brother of Adan and Adrian, and Detective Montano, which Petitioner quotes. (Doc. 69 at 16–17.) The Magistrate Judge's description of these events is not erroneous.

These objections are overruled.

## A.     Claim One

In Claim One, Petitioner asserts that his trial counsel was ineffective for failing to interview a witness, Francisco Santamaria; specifically, Petitioner asserts that Santamaria would have testified that Adan told Santamaria that "he, Adan, wanted to kill [Petitioner] because [Petitioner] . . . had sent Adan's father to prison." (Doc. 57 at 7–8.) Petitioner argues that this testimony would have supported his self-defense theory by showing that Adan wanted to kill him. (Doc. 69 at 20.) The Magistrate Judge found the claim procedurally defaulted and recommended dismissal because Petitioner failed to demonstrate cause and prejudice pursuant to *Martinez*, and therefore, the default was not excused. (Doc. 57 at 7–8.)

Petitioner raises numerous objections on this claim.  Petitioner objects to the Magistrate Judge's characterization of Santamaria "questioning" Adan because, according to Petitioner, they only had a conversation.  (Doc. 69 at 20.)  This objection is frivolous and is overruled.

Petitioner also disputes the conclusion that Santamaria's statement of what Adan told him would not be relevant and would be inadmissible hearsay. (Doc. 57 at 8; Doc. 69 at 18.) Petitioner argues that the statement would have been offered "to show (prove) Adan wanted to kill [Petitioner]," and not to prove "that [Petitioner] sent Adan's father to prison," and that the statement "would have shown Adan had the premeditated intention of killing [him]." (Doc. 69 at 18, 20.)  He claims that the alleged statement by Adan that he, Adan, would not do anything stupid at his grandmother's party meant that Adan

would wait till the party was over.  (Doc. 69 at 20-21.)  As to relevance, the Magistrate Judge found that the issue was whether Adan had a gun, not whether they were in a heated argument.  (Doc. 57 at 8.)   Petitioner disputes this, claiming that at least in part, the issue is whether they were fighting.  (Doc. 69 at 21.)

This Court finds that even if the statement would have been admissible to show Adan's state of mind at the time he made the statement, it would likely not have been admissible to establish his state of mind at the time he was killed, which was hours later.  *See* Ariz. R. Evid. 803(3) (permitting "[a] statement of the declarant's then existing state of mind"). Although Arizona courts have admitted statements considerably more remote in time to show the state of mind of the declarant, *see e.g. State v. Mincey*, 115 Ariz. 472, 481, 566 P.2d 273, 282 (Ariz. 19770, *overruled on other grounds*, *Mincey v. Ariz.*,437 U.S. 385 (1978), those cases have involved statements by the criminal defendants themselves.

But most importantly, the Court agrees with the Magistrate Judge's determination that the jury would not have assigned significant weight to Adan's alleged statement. (Doc. 57 at 8.)   The record shows that Adan's shooting resulted after an altercation between Petitioner and Adan.  Petitioner's theory of premeditation would require a jury to believe that Adan's "plan" to kill Petitioner was to stay up all night drinking with him until early in the morning, and then to get into an altercation with witnesses present and attempt to kill Petitioner. (See Doc. 26–8, at 31–51.) These actions do not suggest premeditation.[4]  The relevant question as to premeditation was whether Adan had a gun. The claim is without merit because there is no reasonable probability that the statement would have resulted in a different outcome.  *See Strickland*, 466 U.S. at 696.

---

[4] Petitioner did not know about Adan's statement, and therefore, the statement could not have influenced Petitioner's actions in killing Adan. *See State v. Hernandez*, 823 P.2d 1309, 1314 (Ariz. App. 1991) ("Words offered to prove the effect on the hearer are admissible when they are offered to show their effect on one whose conduct is at issue.")

1    The Magistrate Judge found that the jury concluded Adan did not have a gun
2    during the altercation "based on testimony from [Adan's] brothers and based on
3    [Petitioner's] statements to police." (*Id.*) Petitioner objects, citing testimony referring to
4    guns found in the car after Adan was shot and to a neighbor's testimony that Adan had a
5    gun. (Doc. 69 at 22–25.) But it is beyond dispute that evidence was presented from which
6    the jury could conclude that Adan did not have a gun; specifically, Adan's brothers
7    testified that Adan did not have a gun when he was killed.  (Doc. 26-8 at 43; Doc. 26-9 at
8    1; Doc. 26-10 at 25.)   The jury was not required to conclude, based on Detective
9    Montano's testimony, that Adan's brothers were lying about whose gun was loaded.[5]
10   (*See* Doc. 69 at 24-25.)  Likewise, the jury was not required to accept the testimony of a
11   neighbor who Petitioner claims said that Adan had a gun in the carport.[6] (Doc. 26-12, at
12   36, 39–40.)  Petitioner cites no testimony that Adan was seen threatening Petitioner with
13   a gun; testimony that guns were found in the car after Adan was shot would not establish
14   that Adan had a gun and was threatening Petitioner.  Moreover, Petitioner fails to connect
15   this line of argument to the claim that counsel was ineffective for failing to interview
16   Santamaria; there is no evidence that Santamaria claimed to have seen Adan with a gun
17   or threatening Petitioner with a gun the night or morning of the shooting.  In other words,
18   this objection is both without merit regarding the jury's conclusion about Adan's
19   possession of a gun and it does not support the ineffective-assistance-of-counsel claim in
20   Claim One.

21   _____
22       [5] Monsanto testified that it was the gun in the front passenger seat (Adan's gun)
     that had a live round of ammunition, contrary to Abram's testimony that he put a round
23   of ammunition in his, Abram's, gun.

24       [6] It is not clear to the Court that the neighbor's testimony was that <u>Adan</u> had a gun.
     The neighbor said she looked out the window after she heard shots and saw two men who
25   had guns.  (Doc. 26-12 at 36-44.)   But one of those people was likely Petitioner; the
     neighbor said the man went into the alley after the car drove off with the victim and
26   within minutes the police arrived.  (*Id*. at 38.)  After the shooting, the police encountered
     Petitioner as he left the alley.  And Abram testified that after he heard a shot, he went to
27   his car, retrieved his gun, and put a round of ammunition in it.  (Doc 26-10 at 28-31.)
     Thus, Abram could have been the second person with a gun.  Even Petitioner's statement
28   to Deputy Loza was equivocal, Petitioner stated something to the effect that "I think he
     had a gun" or as Petitioner claims he said: "he had a gun too, man.  I'm pretty sure."
     (Doc. 69 at 25; ref. Doc. 26-11 at 18.)

Petitioner further argues that the jury "was not completely convinced that Adan was not armed" because it found him guilty of second-degree murder rather than first-degree.  (Doc. 69, at 25.)  Whether or not Adan had a gun is not relevant because the jury found that Petitioner did not act in self-defense when he killed Adan.   As noted, Petitioner points to no evidence showing that even if Adan had a gun, Adan threatened Petitioner with it.

Petitioner fails to demonstrate error in the Magistrate Judge's conclusions or any ineffective assistance of counsel as to the claim raised in Claim One.  The objections are overruled.

## B.      Claim Two

Petitioner asserted that trial counsel was ineffective for failing to "test critical evidence," –specifically, to submit a gun found in the car for DNA testing—and for failing to impeach the testimony of the victim's brothers. (Doc. 25, at 12.) Petitioner does not contest the Magistrate Judge's conclusion that this claim is procedurally defaulted. (Doc. 57 at 9; Doc. 69, at 28–41.)  Rather, he challenges the Magistrate Judge's finding that the claim is insubstantial and that the default may not be excused pursuant to *Martinez.* (Doc. 69 at 41.)

The Magistrate Judge stated that Petitioner "argues DNA tests would prove the gun was Adan's." (Doc. 57 at 9.)  Petitioner submits that he actually argued that such tests would "prove Adan had the gun." (Doc. 69 at 28, 34–35.)  But the Magistrate Judge also stated that "[Petitioner] argues that blood on the gun would prove that the gun was in Adan's hand when he was shot, but that is not true."  (Doc. 57 at 10.)  The Court finds that it is clear that the Magistrate Judge understood the thrust of Petitioner's argument to be that the testing would show Adan was threatening Petitioner with a gun before Petitioner shot him.

Petitioner argued that "trial counsel was ineffective for failing to have the black gun subjected to scientific testing"; the Magistrate Judge stated that this claim "is not entirely clear." (Doc. 57 at 9.)  The Magistrate Judge noted that testimony was presented

at trial that "no usable prints were found" on the gun and that "there is no evidence that any blood was found on the gun" such that DNA testing would be appropriate. (*Id.*) Petitioner objects. (Doc. 69 at 28; Doc. 57 at 9.)  He contends that the testimony that "no usable prints" were found on the gun indicates that prints were found but that the prints were not adequate for comparison.  (Doc. 69 at 28–29.)  This Court finds that the R & R's conclusion is not inconsistent with this; the objection is overruled.

Petitioner argued in his traverse that "counsel should have called a fingerprint expert to confirm that there were no usable fingerprints" (Doc. 69 at 29; ref.  Doc. 53–1, at 33) and that counsel was ineffective in failing to "hire, to call, our own specialist to secure and scrutinize the laboratory materials."  (Doc. 69 at 29.) But these claims were not raised in the amended petition; the claim regarding testing was limited to blood and DNA testing.  (Doc. 25 at 12.)   "A Traverse is not the proper pleading to raise additional grounds for relief." *Cacoperdo v. Demonsthenes*, 37 F.3d 504, 507 (9th Cir. 1994).

Petitioner also challenges as erroneous the Magistrate Judge's statement that there was no evidence that any blood was found on the gun; he cites to Exhibit K to his Traverse, a "Scientific Examination Report" referencing the guns, as establishing that blood was, in fact, found on the gun. (Doc. 69 at 29–30; Doc. 57 at 9.)  Petitioner argues that the test request was for serology, which means blood, so the swabbings were of blood.  (Doc. 69 at 30.)

Assuming that Petitioner is correct, the Magistrate Judge also found that even if Adan's blood been found on the gun, it would not prove that the gun was in Adan's hand when he was shot because Adan was "transported away from the scene in the car in which the gun was found." (Doc. 57 at 10; Doc. 69 at 35.)  Petitioner objects to the Magistrate Judge's statement that Adan's blood could have been deposited on the gun in the car, after the shooting was over. (Doc. 69 at 36.) He cites testimony showing that Adan was placed in the back seat of the car but that the gun was later found "in the front-passenger's seat where there is no blood visible that could have tainted the gun." (*Id.* at

36.)  He argues that photographs of the front seat "shows there is no blood near nor where the gun is." (*Id*. at 37.)

In fact, testimony showed that the gun was on the floorboard under the car's front passenger seat. (Doc 26-10 at 42.) Respondents argue that it is possible that the gun was on the floorboard of the back seat when Adan was placed there. The Court finds that Petitioner has not established that any blood on the gun, including Adan's, was deposited at the time of the shooting.  There is no dispute that the gun in question was Adan's gun; therefore, if his blood was on the gun, it could have been deposited there sometime before the shooting.  Moreover, the presence of Adan's blood on the gun would not show that Adan used the gun to threaten Petitioner.[7]  Thus, there is no reasonable probability that testing the gun for Adan's blood would have changed the outcome of the trial, and Petitioner has not established that trial counsel was ineffective for failing to do so.  *See Strickland*, 466 U.S. at 696.

The amended petition also asserts that counsel was ineffective in failing to impeach and remove witnesses Adrian and Abram with the 911 calls from Adrian on the morning of the shooting and with other claimed inconsistencies in their testimonies.[8] (Doc. 25 at 13-15.) The Magistrate Judge concluded that "trial counsel spent considerable time impeaching" Adan's brothers. (Doc. 57 at 10; Doc. 69 at 39.)  Petitioner cites to arguments he made for the first time in his Traverse that counsel "provided an avenue for the perjurors [sic] to make excuses and change what they had initially told officers." (Doc. 69 at 39.)  Petitioner fails to establish deficient performance as to the cross-

---

[7] For this reason, the Court overrules Petitioner's objection to the Magistrate Judge's interpretation of a note made by defense counsel.  (See Doc. 69 at 31; ref. Doc. 57 at 9 and Doc. 53-2 at 66.)

[8] Petitioner argues in his objections that counsel should have moved to strike the testimony of Adan's brothers "when they admitted to perjuring to [sic] law-enforcement agent" and should have impeached Adrian by calling the 911-operator to testify."  (Doc. 69 at 38.) But neither of these claims appears in Petitioner's amended petition, and therefore, the Court need not consider them.  Even if they were raised, Petitioner fails to establish a reasonable probability that the 911 operator's testimony would have resulted in a different outcome or that failing to make a motion to strike the witnesses' testimony was ineffective assistance of counsel.

examination of the witnesses by trial counsel or otherwise establish ineffective assistance of counsel.

As for Petitioner's complaint that counsel failed to call Detective Montano to impeach Abram, Abram admitted that he lied to police when he told them Adan did not own a gun, so there was no need to call the Detective. (Doc. 69 at 40; Doc. 26-10 at 54–55.) Petitioner fails to establish ineffective assistance of counsel.

In sum, Petitioner fails to demonstrate that counsel was ineffective for failing to test the gun or in his impeachment of the witnesses. The objections regarding the findings on this claim are overruled.

### C.    Claim Three

In this claim, Petitioner argues trial counsel was ineffective for failing to hire a ballistics expert who would have shown that Petitioner was not aiming at Adan when he pulled the trigger; rather, "he was aiming off to the side to warn Adan off." (Doc. 57 at 11.) Petitioner's counsel argued at trial that Petitioner shot the victim intentionally in self-defense; Petitioner asserted in his amended petition that trial counsel should have pursued the theory that Petitioner was not aiming at Adan when he pulled the trigger, but instead he was aiming to the side to warn him off. (Doc. 57 at 11-12.) Petitioner asserts that counsel should have engaged an expert to testify from the appearance of the bullet and the condition of the security door that he was not aiming at Adan and therefore Adan's death was "an accident not murder." (Doc. 25, p. 19) The Magistrate Judge found the claim procedurally defaulted and that *Martinez* did not apply. (Doc. 57 at 11.) Specifically, the Magistrate Judge found that trial counsel's decision not to pursue this "accidental shooting" theory was not deficient performance and that Petitioner did not prove he was prejudiced because, *inter alia*, the "accidental killing" theory is not a defense to the charge of second degree murder in Arizona. (Doc. 57 at 12.)

The objections raised to the Magistrate Judge's conclusions on this claim are particularly difficult to follow as they contradict other claims and rely largely on

frivolous "discrepancies" between the Magistrate Judge's statements and Plaintiff's claims and arguments.  The objections will be overruled.

Petitioner objects to the Magistrate Judge's description of his claim but he fails to demonstrate it is inaccurate; as Respondents note, Petitioner merely provides more detail of his claim. (Doc. 69 at 42.)  Petitioner asserts that "no where in any filing do[es] [he] state [he] was aiming to the side."  But the Magistrate Judge's description is consistent with Petitioner's claim that he was not aiming at Adan when he shot him.  (Doc. 69 at 45.) He points to his amended petition where he argued that a ballistics expert would have showed he was not aiming at Adan.  Any discrepancy between "not aiming at Adan" and "aiming to the side" is immaterial.[9]

As to the finding of procedural default, Petitioner argues it is clearly erroneous because under *Dickens v. Ryan*, a court can entertain a new claim based on new evidence.[10]  (Doc. 69 at 43.)  Petitioner misunderstands *Dickens*. In *Dickens v. Ryan*, the Ninth Circuit Court of Appeals held that an ineffective-assistance-of-counsel claim adjudicated on the merits in state court is nonetheless unexhausted, and may be procedurally defaulted, if it is fundamentally altered by new facts alleged in a federal habeas petition.  740 F.3d 1302 (9th Cir. 2014) (en banc). In such a case, *Dickens* requires a Court to apply *Martinez.  Id.* at 1319-20. *Dickens* does not guarantee an evidentiary hearing on the new claim.  In the present case, *Martinez* does not save the claim because, as discussed below, the ballistics expert's testimony would not be likely to have produced a different result.

---

[9] Petitioner also claims that counsel knew that shooting in self-defense was false because counsel knew Petitioner had fired two warning shots through the door.  (Doc. 69 at 44; ref. Doc. 57.)  He objects to the Magistrate Judge's characterization of the warning-shot argument as a "theory" because counsel knew it to be "the truth, not a theory." (Doc. 69 at 44.)   Petitioner's objection is overruled.

[10] He also claims this argument applies to "p.7, line 5-9; p.9, line 6-10; p. 11, line 13-17 and; p. 17, line 19-20."  (Doc. 69 at 43.)  The Court will not consider objections set forth in this manner and overrules them.

The Magistrate Judge states that Petitioner "maintains counsel should have engaged an expert to testify from the appearance of the bullet and the condition of the security door that he was not aiming at Adan and therefore Adan's death was 'an accident not murder.'" (Doc. 57 at 11–12; Doc. 69 at 45.) Petitioner objects to the "accident" characterization, arguing that he never claimed an "accidental killing." (Doc. 69 at 51.) But an accidental killing is exactly what Petitioner is arguing.  Petitioner cites to his habeas petition; the citation supports the Magistrate Judge's statement of the claim, explaining in detail how an expert would have aided his defense by showing he was not aiming at Adan. (Doc. 69 at 45.) According to Petitioner, the shots ricocheted off the metal security door, accidentally killing Adan.  (Doc. 25 at 18-19.)  These objections are utterly frivolous.

Petitioner also challenges the Magistrate Judge's statement that she "assumes without deciding that an expert could be found to testify that [Petitioner] was not aiming his gun at Adan." (Doc. 57 at 11 n.1.) To the extent that Petitioner is objecting because he has actually found an expert to so testify, the Magistrate Judge assumed the validity of the expert opinions. (Doc. 69 at 46–47; ref. Doc. 52, Exs. A, B.)   The Magistrate Judge explained that, even if the shooting was accidental as Petitioner claims, Petitioner was nevertheless properly convicted of second-degree murder under Arizona law because he "manifest[ed] extreme indifference to human life." (Doc. 57 at 12 (citing A.R.S. § 13–1104(A)(3)).) Petitioner argues that he "show[ed] extreme value of human life" by firing warning shots to ward off Adan's alleged attack. (Doc. 69 at 48–49.)  Petitioner claims that "A.R.S. [§ 13–1104(A)(3)] only applies when there is no provocation by the victim" or that Arizona's justification statutes "provide for a person firing a warning shot justified [sic] when not wanting to cause harm." (Doc. 69, at 48–49.)  But he cites no authority in support.  As the Magistrate Judge pointed out, second-degree murder does not require an intent to kill. A person is also guilty of second degree murder "if without premeditation [u]nder circumstances manifesting extreme indifference to human life, the person recklessly engages in conduct that creates a grave risk of death and thereby causes the

death of another person . . . ." A.R.S. § 13-1104.   Respondents argue that "given Petitioner's intoxicated state, the jury would likely have found that the firing of warning shots through a closed, locked security door into a carport manifested 'extreme indifference to human life' or was provocation that would have rendered self-defense unavailable." (Doc. 71 at 16, citing A.R.S. § 13–1104(A)(3).)

Petitioner objects to the Magistrate Judge's reliance on Deputy Loza's testimony regarding statements Petitioner made, calling Loza a "perjuror [sic]."  (Doc. 69 at 53; ref. Doc. 57 at 13.) But Loza's testimony was presented at trial; the testimony cited is Petitioner's statement to Loza that "I think he [Adan] had a gun, I'm pretty sure." (*Id.*)

Petitioner disputes the Magistrate Judge's conclusion that counsel reasonably chose to present a theory of self-defense rather than accident. (Doc. 69, at 53–54.)  But Petitioner has not established that he was prejudiced. The Court agrees with the Magistrate Judge that this theory was unlikely to succeed. Deputy Loza testified that after the shooting, Petitioner said that "someone was trying to punk him . . . so he had to do him." (Doc. 26-11, p. 14) Petitioner further stated, "I was trying to wing him." (Doc. 26-11, pp. 17-18) "Trying to wing" the victim is not consistent with Petitioner's argument that he was not aiming at him.  As the Magistrate Judge observed, in light of these statements, counsel could have concluded it would be difficult to convince the jury of an "accidental shooting." (Doc. 57 at 12.)  Moreover, if trial had counsel presented the evidence Petitioner contends should have been presented, the jury was still likely to have found him guilty of second-degree murder based on Petitioner having fired two shots through a locked door, and into a carport, with someone inside and while he was intoxicated.

Petitioner argues in his objections that his counsel "refused to let [him] testify" in support of the self-defense theory. (Doc. 69 at 54.) But he did not raise this claim in his amended habeas petition, and he has not provided facts in support—he does not even show what his testimony would have been.  In addition, the Magistrate Judge correctly

found the defense could be presented "without the need for putting the defendant on the stand." (Doc. 57 at 13.)  Petitioner fails to demonstrate any prejudice.

Petitioner also notes that he hired a forensic pathologist and presented that expert's opinions with his Traverse. (Doc. 69 at 56–57.) Petitioner incorrectly asserts, however, that these experts would have demonstrated that he "was not manifesting extreme indifference to human life" when he killed Adan—those experts could not have known Petitioner's state of mind or the circumstances surrounding the murder. (*Id*. at 58.) This Court agrees with the Magistrate Judge's determination that these experts' opinions "would not have prevented his conviction for second degree murder." (Doc. 57 at 13.)

Petitioner has failed to meet his burden to show that had defense counsel obtained the ballistics report, it is reasonably probable that the result would have been different. *See Strickland*, 466 U.S. at 696.

### D.    Claim Four

In this claim, Petitioner asserted that trial counsel was ineffective for failing to present a self-defense theory. (See Doc. 25 at 21–24.) The Magistrate Judge found that "[t]his claim is not particularly clear," noting that counsel did, in fact, argue self-defense, and recommended this claim be dismissed as "too ambiguous for relief." (Doc. 57 at 13.)

In his objections, Petitioner argues that his claim is actually that "trial counsel presented a false-version of what happened." (Doc. 69 at 59.) The amended petition, however, designates this claim as "Ineffective Assistance—Failure to present self defense," and this is the claim argued in the amended petition. (Doc. 25 at 21-24.) Moreover, even if the Court assumes that Petitioner is referring to the warning-shots argument, the Court has disposed of that, finding no merit and therefore, no ineffective assistance of counsel.

The Magistrate Judge's conclusion that the claim is ambiguous is not erroneous. The objection is overruled.

///

///

1    E.    **Claim Five**

2        In Claim Five, Petitioner asserted that in violation of *Brady,* the State failed to

3    disclose evidence impeaching Deputy Loza. (Doc. 25, at 26–30.) The Magistrate Judge

4    found that this claim was properly exhausted in the state courts.   But Petitioner now

5    asserts that his claim is actually an "IAC—Violation of *Brady*," which was not

6    exhausted. (Doc. 69 at 61("This claim is a 'new' IAC claim of PCR counsel for failure to

7    raise IAC of trial counsel relative to *Brady*.").)

8        The Court finds that the amended petition does not raise a claim that counsel was

9    ineffective "relative to *Brady*;" rather it raised a substantive *Brady* claim.   (Doc. 25 at

10   26–30.)   The Court will not permit Petitioner to re-characterize this claim to one of

11   ineffective assistance by asserting it in his Traverse.   Moreover, he does not identify any

12   deficient performance by trial counsel; instead he claims that "[f]irst PCR counsel was

13   ineffective in not raising this in the first PCR." (*Id*. at 66.)   But PCR counsel did raise the

14   *Brady* claim. (Doc. 57 at 13–14; see Doc 26-3 at 16–17; Doc. 26-5 at 13–15.)   To the

15   extent that Petitioner asserts a substantive claim of ineffective assistance of PCR counsel,

16   that claim is barred by 28 U.S.C. § 2254(i).   The Magistrate Judge did not err in finding

17   the *Brady* claim exhausted.

18       As to the *Brady* claim, Petitioner asserts that Deputy Loza lied at a court hearing

19   on February 25, 2009, a few months before Petitioner's trial.   Petitioner maintains that if

20   the state had disclosed this information as required by *Brady*, his counsel would have

21   used it impeach Loza, and he would have won his motion to suppress his statements. He

22   argues that the state's failure to disclose this information violated *Brady v. Maryland,*

23   which provides that a defendant has a due process right to material exculpatory evidence

24   in the possession of the prosecution at the time of trial. 373 U.S. 83, 87 (1963).

25       The record here shows that the January 2010 internal affairs report finding that

26   Loza gave false information at a traffic hearing "did not exist at the time of the trial

27   which occurred in May of 2009." (Doc. 57 at 14.) Therefore, it could not have been

28   disclosed at trial. Petitioner argues that the prosecutor should have disclosed the

underlying incident in which Loza "admitted to internal affairs that he was removed from the stand at least twice." (Doc. 69 at 63.) But the admissions are in the January 2010 internal affairs report, and there is no evidence suggesting that the prosecutor could be imputed with knowledge at the time of Petitioner's trial.  (Doc. 57 at 15.) The Magistrate Judge properly ruled that the state court's denial of relief on this claim was not contrary to or an unreasonable application of federal law. (Doc. 57 at 15.)

The Magistrate Judge also ruled that Petitioner may not present additional evidence supporting this claim. (Doc. 57 at 15 (citing *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); Doc. 69 at 68–71.)  Petitioner objects and argues that this claim is actually one of ineffective assistance, not the *Brady* claim that was exhausted.  He claims that *Pinholster* does not bar a hearing. (Doc. 69, at 68–71.)   But this Court has already determined that the claim raised in the amended petition was not ineffective assistance of counsel; the ineffective assistance of counsel claim was first raised in the traverse, and the Court will not consider it.

The Magistrate Judge also ruled that Petitioner was not prejudiced by his counsel's failure to present other officers to impeach Loza's testimony; Petitioner objects. (Doc. 69 at 71; ref. Doc. 57 at 15.) The Magistrate Judge acknowledged inconsistencies between Loza's testimony and the accounts of the other officers but concluded that the discrepancies in the testimony were minor and could not have affected the outcome of the trial. (Doc. 57, at 15.)  Even if the allegation in the amended petition—that trial counsel aggravated the situation by not calling the officers—was sufficient to raise a claim of ineffective assistance of counsel in this regard, Petitioner fails to establish that there is a reasonable probability that the additional testimony would have resulted in a different outcome at trial.

The Court overrules the objections.

## F.     Claim Six

Petitioner asserts that the jury committed misconduct by receiving a copy of Deputy Loza's report during its deliberations, and trial and appellate counsel were

ineffective in failing to properly address the issue. (Doc. 25, at 31.) The Magistrate Judge found that Petitioner's claims of ineffective assistance of trial and appellate counsel were properly exhausted and are not defaulted. (Doc. 57 at 16; see Doc. 69 at 74–75.)

Nevertheless, Petitioner argues in his objections that default of these should be excused pursuant to *Dickens* "for neither trial nor PCR counsel properly raised this claim."8 (Doc. 69, at 75.) But default is not the issue**.** The Magistrate Judge held that the state courts' ruling that trial and appellate counsel were not ineffective "was not contrary to or an unreasonable application of federal law." (Doc. 57 at 17 (internal quotation marks omitted).)  The Court agrees and overrules the objections.

### G.    Claim Seven

In Claim Seven, Petitioner alleged that the prosecutor committed misconduct by "knowingly disregarding facts and concealing fact witnesses." (Doc. 25, at 35.) The Magistrate Judge found that this claim was procedurally defaulted because it was not raised in the state courts (Doc. 57 at 17) and that that the default of this claim could not be excused under *Martinez* because *Martinez* can excuse only the default of an ineffective-assistance claim, not a claim for prosecutorial misconduct. *See Hunton v. Sinclair*, 732 F.3d 1124, 1126–27 (9th Cir. 2013).

Petitioner now argues in his objections that this claim is actually one of ineffective assistance by trial and appellate counsel for "fail[ing] to raise this issue," and thus, it can be excused under *Martinez*. (Doc. 69, at 77.)

But Petitioner did not raise such a claim in his habeas petition, and a conclusory statement that "appellate and PCR counsel were aware of this fact and failed to raise the issue," is insufficient to allege a claim of ineffective assistance. (See Doc. 25 at 41.)  The Court finds that Petitioner has not demonstrated that the Magistrate Judge erred in finding Claim Seven procedurally defaulted.

IT IS ORDERED:

(1)    The Report and Recommendation (Doc. 57) issued on March 23, 2016 is adopted.

(2)     The Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 25) is denied, and the case is dismissed.

(3)     A certificate of appealability is denied because Petitioner has not made a substantial showing of a denial of a constitutional right.  28 U.S.C. § 2253(a), (c)(2).

Dated this 18th day of November, 2016.

Honorable Cindy K. Jorgenson
United States District Judge